IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
In re:                         )
                               )
SALVADOR B. and                )    2:05-cv-1107-GEB
DOLORES SALAS,                 )
                               )    Bankruptcy Court Case No.
            Debtors.           )    04-31266-D-7
_____)
                               )    ORDER
SALVADOR B. and                )
DOLORES SALAS,                 )
                               )
            Appellants,        )
        v.                     )
                               )
MICHAEL MCGRANAHAN,            )
Bankruptcy Trustee,            )
                               )
            Appellee.          )
_____)
```

This is an appeal from a ruling of the United States Bankruptcy Court that denied Appellants' motion to force Appellee, the trustee of the chapter 7 estate, to abandon the estate's interest in Appellants' residence.[1]  The bankruptcy court ruled the non-exempt equity created by the appreciation of Appellants' residence after the filing of their chapter 13 petition belonged to the converted chapter 7 estate.  A tentative ruling on the appeal

---

[1] Unless otherwise noted, all chapter and section references are to the Bankruptcy Code.

1

issued September 15, 2006.  <u>Salas v. McGranahan</u>, 2006 WL 2650160 (E.D. Cal. Sept. 15, 2006).[2]  Oral argument was held September 18, 2006.[3]  For the reasons stated below, the decision of the bankruptcy court is reversed and this matter is remanded.

STANDARD OF REVIEW

The issues to be decided on appeal are questions of law, and therefore the de novo standard applies.  <u>In re Bammer</u>, 131 F.3d 788, 792 (9th Cir. 1997); <u>In re Jodoin</u>, 209 B.R. 132, 135 (9th Cir. BAP 1997).

BACKGROUND

On December 30, 2002, Appellants filed a petition for bankruptcy protection under chapter 13.  Appellants included in their petition their personal residence located in Stockton, California, (the "Stockton Property") and valued it at $190,000.  Two creditors holding deeds of trust on the Stockton Property filed secured claims totaling $131,603.17, resulting in equity of $58,396.83 in the Stockton Property.  Appellants also claimed a $75,000 homestead exemption in their petition under California Code of Civil Procedure § 704.710 <u>et seq.</u>  No objections were filed

---

[2]  It is unclear why this tentative ruling was placed online.

[3]  At oral argument, Appellee raised the significance of the fact that Appellants' property did not vest with them upon conversion of their chapter 13 proceeding to a chapter 7 proceeding.  Appellants countered that Appellee had waived this issue since it was not presented to the bankruptcy court, and Appellee did not rebut this argument.  The record reveals Appellee did make passing reference of the vesting issue to the bankruptcy court and in his brief on appeal.  (<u>See</u> Appellants' Excerpts of the Record at 21; Appellee's Br. at 6.)  However, "[a] district judge is . . . entitled to disregard a ground raised but not pressed."  <u>National Metalcrafters, Div. of Keystone Consol. Industries v. McNeil</u>, 784 F.2d 817, 825 (7th Cir. 1986).  Since Appellee presented the vesting issue in a "perfunctory and underdeveloped . . . manner" and did not press the issue at oral argument, this argument will not be reached.  <u>Id.</u>

against the homestead exemption or the valuation of the Stockton Property.  On May 7, 2003, Appellants' chapter 13 plan was confirmed.  Because of the two secured claims and Appellants' homestead exemption, no non-exempt equity existed in the Stockton Property when the plan was confirmed.

On February 17, 2004, Appellants' chapter 13 case was converted to chapter 7 due to their inability to meet the plan's requirements.  Appellee was appointed trustee of the chapter 7 estate.

Between confirmation of the chapter 13 plan and the subsequent conversion to chapter 7, the Stockton Property appreciated to a fair market value of approximately $305,000.  This created equity in the Stockton Property above Appellants' homestead exemption.

On January 21, 2005, Appellants filed a motion in the bankruptcy court for an order that would have required Appellee to abandon the estate's interest in the post-petition appreciation of the Stockton Property.  Appellants argued there was no non-exempt equity in the Stockton Property to benefit their creditors since none existed when the chapter 13 plan was confirmed, and any appreciation equity over the amount existing when the chapter 13 plan was confirmed belonged to Appellants under section 348(f).  Appellee countered that this appreciation equity enured to the benefit of the estate.  The bankruptcy court denied Appellants' motion in a minute order filed April 26, 2005, ruling any equity in the Stockton Property above Appellants' homestead exemption belonged to the estate.

/////
/////

## DISCUSSION

Appellants argue the language and legislative history of section 348(f), as well as the pertinent case law, all "support[] the position that . . . it is the [Stockton Property's] value as of the date the [c]hapter 13 was filed that becomes property of the [c]hapter 7 estate upon conversion" and any "post-petition appreciation belongs to [Appellants] . . . ." (Appellants' Br. at 6, 10.) Appellee disagrees, relying on the Ninth Circuit's interpretation of language in section 541(a)(6) "to mean that appreciation enures to the bankruptcy estate, not the debtor."[4] In re Reed, 940 F.2d 1317, 1323 (9th Cir. 1991).[5] (Appellee's Br. at 4.) Appellants counter that section 348(f) rather than section 541(a)(6) applies "when a [c]hapter 13 [case] is converted to a [c]hapter 7 [case,]" (Appellants' Br. at 10), and argue that the Ninth Circuit authority on which Appellee relies "does not . . . deal[] with the effect of [section 348(f)] when a confirmed [c]hapter 13 case is converted to a [c]hapter 7 case." (Appellants' Reply Br. at 4.)

The Ninth Circuit decisions on which Appellee relies do not involve application of section 348(f). Congress enacted section 348(f) as part of the Bankruptcy Reform Act of 1994, and that section governs the valuation of property in a bankruptcy estate when a bankruptcy case is converted from a chapter 13 proceeding to a chapter 7 proceeding. The statute states:

---

[4] Section 541(a)(6) provides that property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case."

[5] The other Ninth Circuit decisions cited by Appellee for this proposition are: In re Alsberg, 68 F.3d 312 (9th Cir. 1995); and In re Hyman, 967 F.2d 1316 (9th Cir. 1992).

4

>     (f)(1) Except as provided in paragraph (2),
>     when a case under chapter 13 of this title is
>     converted to a case under another chapter under
>     this title--
>
>         (A) property of the estate in the
>         converted case shall consist of
>         property of the estate, as of the
>         date of filing of the petition, that
>         remains in the possession of or is
>         under the control of the debtor on
>         the date of conversion; and
>
>         (B) valuations of property and of
>         allowed secured claims in the chapter
>         13 case shall apply in the converted
>         case, with allowed secured claims
>         reduced to the extent that they have
>         been paid in accordance with the
>         chapter 13 plan.
>
>     (2) If the debtor converts a case under chapter
>     13 of this title to a case under another
>     chapter under this title in bad faith, the
>     property in the converted case shall consist of
>     the property of the estate as of the date of
>     conversion.[6]

Because this is a converted case, the value of the Stockton Property is governed by section 348(f).[7]

Since "[s]ection 348(f) does not provide specific guidance of what constitutes a 'valuation' in a [c]hapter 13 case[,]" Bargeski v. Rose, 2006 WL 1238742, at *4 (D. Md. March 31, 2006), it is necessary to examine the section's legislative history. See Nuclear Info. and Res. Serv. v. U.S. Dep't of Transp. Research and Special Programs Admin., 457 F.3d 956, 960 (9th Cir.

---

[6] A 2005 amendment to this subsection altered its language to explicitly exclude from coverage chapter 13 to chapter 7 conversions. However, the amendment does not apply in this case because Appellants' bankruptcy case commenced before the non-retroactive amendment was enacted. See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1501 (2005) (effective in cases commenced 180 days after enactment).

[7] Appellee makes no claim that Appellants converted their case to chapter 7 in bad faith.

5

2006) ("Courts can only look to legislative history to determine congressional intent if a statute is ambiguous."). The Bankruptcy Reform Act of 1994 brought section 348(f) into the Bankruptcy Code to "encourage debtors to reorganize their affairs through chapter 13 rather than to immediately liquidate their property under chapter 7." Warren v. Peterson, 298 B.R. 322, 326 (N.D. Ill. 2003); see also In re Archie, 240 B.R. 425, 431-32 (S.D. Ala. 1999) ("the Bankruptcy Code was meant to encourage income earners with financial problems to attempt chapter 13 rather than filing chapter 7 as a first resort") (citing In re Pearson, 214 B.R. 156, 164 (Bankr. N.D. Ohio 1997) for the proposition that the legislative history to section 348(f) showed Congress's "concern that debtors not be discouraged from filing chapter 13 cases because of their fear of losing benefit of initial chapter 7 filing").

Several courts have found the legislative history supports the "general conclusion that confirmation of a plan constitutes an implicit valuation." In re Niles, 342 B.R. 72, 74, 76 (Bankr. D. Ariz. 2006); see also Warren, 298 B.R. at 326 ("[R]ecognizing implicit valuations is consistent with congressional intent as it encourages debtors to file chapter 13."); In re Slack, 290 B.R. 282, 287 (Bankr. D. N.J. 2003) (relying on section 348(f)'s legislative history to hold a "chapter 13 plan['s] confirm[ation] . . . [i]s an implicit finding that the scheduled value . . . [i]s proper"); In re Page, 250 B.R. 465, 466 (Bankr. D. N.H. 2000) (relying on section 348(f)'s legislative history to hold that "the value of the property as scheduled in the confirmation process is, in fact, the valuation for purposes of section 348(f)"); c.f. In re Kuhlman, 254 B.R. 755, 758 (Bankr. N.D. Cal. 2000) (agreeing with reasoning of In re Page and stating

1  "confirmation of a [c]hapter 13 plan is an implicit valuation which
2  meets the requirement of [section 348(f)], so that post[-]petition
3  appreciation belongs to the debtor[,]" but holding that where there
4  was no plan confirmation, there was no valuation and, therefore,
5  the debtor was not entitled to post-petition appreciation); but see
6  In re Jackson, 317 B.R. 511, 513-14 (Bankr. N.D. Ill. 2004)
7  (disagreeing with the concept of implicit valuation).  The
8  interpretation of section 348(f) that confirmation of the chapter
9  13 plan is an "implicit valuation" that applies to the converted
10 estate comports with the text and legislative purpose of the
11 statute.  However, Appellee argues that "the [post-petition]
12 appreciation is not property in and of itself" but instead "is
13 merely a characteristic of the property" which Appellants acquired
14 "prior to the commencement of the chapter 13 case . . . ."
15 (Appellee's Br. at 4.)  "While admittedly an increase in value to
16 real property is not the same as after-acquired property as that
17 term is traditionally defined under bankruptcy law, it is similar
18 in nature and justifies the same result."  In re Niles, 342 B.R. at
19 76.  Therefore, the order confirming Appellants' chapter 13
20 bankruptcy plan was an implicit valuation of the scheduled
21 property, which is binding on the converted chapter 7 estate.
22         For the stated reasons, the value of the Stockton
23 Property to the chapter 7 estate was circumscribed by section
24 348(f)(1)(B) and limited to the value given it in Appellants'
25 confirmed chapter 13 plan.  Therefore, the decision of the
26 bankruptcy court is reversed and the matter is remanded to the
/////
/////
/////

7

1  bankruptcy court for further proceedings consistent with this
2  opinion.
3            IT IS SO ORDERED.
4  Dated:  September 26, 2006

                                    /s/ Garland E. Burrell, Jr.
                                    GARLAND E. BURRELL, JR.
                                    United States District Judge